Hillsborough,
No. 5797.

MAURICE F. DEVINE, *Tr.*

*v.*

ALPHEAGE A. COTE *& a.*

Argued October 2, 1968.
Decided November 26, 1968.

*Devine, Millimet, McDonough, Stahl & Branch* and *John S. Holland* (*Mr. Holland* orally), for the plaintiff filed no brief.

*Stein, Rudman & Gormley* for Cote.

*Danais & Danais* and *Thomas B. Wingate* (*Mr. Wingate* orally), for the defendant Conrad Danais, guardian of Leo Bouchard.

*Leonard, Leonard & Prolman* and *Gerald R. Prunier* (*Mr. Prunier* orally), for the defendant Wesley Greeley.

KENISON, C. J. Petition for instructions by the plaintiff who is

the successor trustee under the will of Mary Bouchard whose will dated January 18, 1935 was duly allowed. The parties submitted an agreed statement of facts. The Court (*Leahy*, C. J.) reserved and transferred without ruling the questions of law relating to the trustee's duties as to the disposition of the trust fund under the will for the benefit of testatrix's son, Leo E. Bouchard, who is and has been since World War I a mentally incompetent veteran.

The testatrix bequeathed the residue of her estate in trust for her son ". . . for his support, maintenance and education while the said Leo E. Bouchard is unable to manage his affairs, and when he is able to take care of his affairs then this bequest is to vest in him absolutely and in fee simple to him and his heirs forever; provided nevertheless that if the said Leo E. Bouchard should die before the termination of this trust, without leaving issue surviving him, then this bequest should go to my said sister, Julie Anna Cote nee Tremblay, to her and her heirs forever."

The amount of the trust fund at the time the successor trustee was appointed in 1951 was approximately $7,700 and is now $20,000. During this period no payments have been made to the beneficiary, Leo, or his guardian. The amount of the guardian's fund is $60,000 and the guardian continues to receive monthly veteran's benefits. According to the agreed statement of facts this monthly payment is $350 but this may be increased under recent veterans legislation. Prior to 1966 the beneficiary, Leo, was confined to a veterans hospital and the expenses of the guardian have been minimal but now Leo has been placed in a private nursing home at an average monthly expense of $700.

The agreed statement of facts contains the following statement: "Insofar as distributions are made from the trust under the will of Mary Bouchard, the expectancy of the remaindermen of the trust estate is reduced. Insofar as distributions are made from the funds under the control of the guardian, the expectancy of the heirs-at-law of Leo E. Bouchard is reduced. Since the remaindermen under the trust and the heirs-at-law of the ward are not the same persons, the trustee and the guardian are in the position of favoring either the remaindermen or the heirs-at-law by the actions which they take. The trustee is in doubt concerning his duties under the trust instrument and for this reason has sought instructions from the Court."

While it is certain that Leo has and will continue to receive such support and maintenance as he needs, his probable heirs at law on the one hand and the remaindermen under the trust on the other hand each claim that the other fund should bear the burden of paying for it. If there is any decision squarely in point it has eluded counsel and the court. We start with 2 Scott, Trusts (3d *ed.* 1967) *s.* 128.4, *p.* 1020; "It is a question of *interpretation* whether the beneficiary is entitled to support out of the trust fund even though he has other resources. Where the trustee is directed to pay to the beneficiary or to apply for him so much as is necessary for his maintenance or support, the *inference* is that the settlor intended that he should receive his support from the trust estate, even though he might have other resources" (emphasis supplied). While the will is silent on this question, in "all of these cases, if the intention of the settlor is not clearly expressed, resort may be had to all of the circumstances in order to determine his intention." Scott, *supra, p.* 1024. The size of the trust estate, the nature and extent of the other resources, the condition in life of the beneficiary, and the purpose of the trust are some of the circumstances that are important in reaching a decision. *Rogers* v. *Munsey,* 103 N. H. 37, 41; *Munsey* v. *Laconia Home,* 103 N. H. 42, 46; *Amoskeag Trust Co.* v. *Wentworth,* 99 N. H. 346; *Indian Head Nat'l Bank* v. *Theriault,* 97 N.H. 212; Bogert, Trusts and Trustees (2d *ed.* 1962) *s.* 811, *pp.* 207-212.

The trust in this case is a trust for support. Restatement (Second), Trusts, *s.* 154, *comment* b; *Chase* v. *Currier,* 63 N.H. 90; *Brahmey* v. *Rollins,* 87 N. H. 290, 299-300. Bogert, Trusts and Trustees (2d *ed.* 1965) *s.* 229. The inference that the trust fund should be paid out for Leo irrespective of the larger guardianship fund (Restatement (Second), Trusts, *s.* 128, *comment* e) does not command acceptance in the circumstances of this case. We do not know the exact amount of the trust fund when it was originally established in 1936 but it was most likely small because it was only approximately $7,700 in 1951. The testatrix was probably aware of veterans benefits to which her son was and would be entitled and would normally assume that the trust fund was a supplemental and added protection for her son considering the amount of the fund and his age and mental condition. *Bridgeport* v. *Reilly,* 133 Conn. 31; *Smith* v. *Gillikin,* 201 Va. 149. Additionally it is clear from her will that what

was not needed for Leo upon termination of the trust was to become the property of her sister and her heirs. Hence although the primary duty of the trustee was to support Leo, there was at least a secondary duty to consider the residuary beneficiaries of the trust. *Rogers* v. *Munsey,* 103 N. H. 37, 41. In determining the rights of the beneficiary to support and maintenance, the trustee may properly consider Leo's other resources. *Eaton* v. *Eaton,* 82 N. H. 216, 218. The guardian's duty is to Leo and he has no responsibility for the welfare of remainder interests or heirs at law, particularly where Leo has neither spouse nor children. RSA 462:4; RSA 465:12, 14; Fratcher, Powers and Duties of Guardians of Property, 45 Iowa L. Rev. 264 (1960).

The immediate problem of the trustee and guardian as fiduciaries is to provide $700 monthly for the support and maintenance of Leo. For that purpose the guardian may properly use the current monthly payment from the Veterans Administration plus the current and accrued interest on the guardianship fund of $60,000 and the trustee may use the accrued and current income from the trust. This would appear to meet the immediate problem at hand. If additional money is required it may be supplied by the guardianship fund and if that becomes substantially depleted, the trustee would have a duty to make up the difference from the trust fund. See *In re Tuthill's Will,* 247 Minn. 122; *Chase* v. *Currier,* 63 N. H. 90. This construction of the will in the light of the existence of the guardianship fund is consistent with the rule followed in this state which gives a constructional preference for the maximum validity of the testatrix's dispositive plan in the light of all the circumstances. *In re Lathrop Estate,* 100 N. H. 393, 395.

*Remanded.*

All concurred.