MADDOX, Justice.
This case involves the construction of an insurance policy and whether the insurance company was obligated to defend the insured in a lawsuit brought against the insured for an “occurrence” which occurred off the premises of the insured, because the policy only covered occurrences “arising out of the ownership, maintenance, or use of the insured premises and all operations necessary or incidental thereto.”
The trial court, construing the language of the policy, found the insurer was not obligated to defend the insured in an action brought against it, and granted summary judgment in favor of the insurer. The insured appealed. We reverse and remand.
For the purposes of this appeal, the facts are undisputed. On the evening of November 9, 1984, two employees of Pierce-Dickerson Bonding Company, the insured, were dispatched to apprehend a fugitive sought by the bonding company. They found the fugitive at a nightclub located outside the Mobile city limits, and in the course of capturing him a bonding company employee wounded a Mobile County sheriff’s deputy.
When the deputy filed suit against Pierce-Dickerson and others to recover for his injuries, Southern Guaranty, which would be required to defend Pierce-Dickerson if the policy applied, sought a judgment declaring that the occurrence sued on was not covered by its policy issued to Pierce-Dickerson. In the declaratory action, both parties moved for summary judgment. The trial court examined the policy language, heard oral argument, and then granted summary judgment in favor of Southern Guaranty. Implicit in that ruling is a judgment that, as a matter of law, the insurance contract cannot be read to provide coverage for Pierce-Dickerson under these facts.
The issue underlying the propriety of summary judgment is whether the insurance policy admits of more than one interpretation. If the policy is clear and unambiguous, then summary judgment in accordance with its terms would be proper. If, however, the terms are ambiguous, then summary judgment could not properly be granted; a trial would be required and the trier of fact would be entitled to determine the reasonable expectations of the parties under the terms of the contract.
The policy in question is entitled an “owner’s, landlord’s, and tenant’s liability policy,” and the coverage is described under a section entitled “Description of Hazards” as being “Premises-Operations.” The pertinent language, which Southern Guaranty contends did not obligate it to defend Pierce-Dickerson, reads as follows:
“The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
*1221 “A. Bodily injury or
“B. Property damage
to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance, or use of the insured premises and all operations necessary or incidental thereto, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent....” (Emphasis added.)
Southern Guaranty contended, in its summary judgment motion and now in its brief, that this passage was clear and could not be read to cover an occurrence such as the one at issue here. Southern Guaranty argues that since the incident occurred at an establishment a number of miles from the Pierce-Dickerson offices (designated in the policy as the “insured premises”) the policy does not apply.
The language used in the Pierce-Dickerson policy is common in the insurance industry. Indeed, in the case of United States Fidelity & Guaranty Co. v. Birmingham Oxygen Serv., Inc., 290 Ala. 149, 274 So.2d 615 (1973), this Court construed essentially the same policy language in a virtually indistinguishable factual setting. In that case, Birmingham Oxygen, in the ordinary course of business, regularly delivered oxygen canisters to the plaintiff's decedent. After Birmingham Oxygen mistakenly delivered the wrong gas cylinders and its customer died, allegedly as a result of that misdelivery, the customer’s adminis-tratrix filed a wrongful death action against Birmingham Oxygen. There, as here, the insurer sought a judgment declaring that it was not obligated to defend. In its opinion, this Court quoted the language of Birmingham Oxygen’s “premises-operations hazard” coverage:
“This company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this section applies, caused by an occurrence and arising out of the ownership, maintenance or use of the premises, and all operations necessary or incidental thereto....”
Id., 290 Ala. at 153, 274 So.2d at 618. This Court then stated: “Clearly, under the evidence the sale and delivery of oxygen and allied gases was the principal business of Birmingham Oxygen Service, and without question was necessary and incidental to the operation of the business.’’ (Emphasis added.) Id., 290 Ala. at 154, 274 So.2d at 619.
We hold that our decision in Birmingham Oxygen is controlling on the issue before us. While this Court’s research does reveal similar cases which deny coverage, see generally, Annot., 62 A.L.R.3d 889 (1975); Annot., 23 A.L.R.3d 1230 (1969), those same sources indicate that our present holding follows Alabama precedent and is consistent with the law in the majority of jurisdictions.
The Birmingham Oxygen case and the present case, it should be noted, differ in the posture in which they reached this Court. Birmingham Oxygen was appealed from the declaration of a chancellor in equity that the insurer was obligated to defend Birmingham Oxygen. As the present case is on appeal from summary judgment, we restrict our decision to that issue. The policy language is ambiguous and it cannot be said, as a matter of law, that the policy cannot be read to provide coverage for the acts of an employee who is acting within the line and scope of his employment but is away from the insured premises. The trier of fact is entitled to consider extrinsic evidence to determine whether, within the actual intent and understanding of the parties when the policy was issued, the employee was engaged in an operation necessary or incidental to the ownership, maintenance, or use of the insured premises. Franklin v. Jones, 466 So.2d 96 (Ala.1985). For that reason, summary judgment in favor of Southern Guaranty was improper. The judgment of the trial court is due to be, and it hereby is, *1222 reversed and the case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and ALMON, BEATTY and HOUSTON, JJ„ concur.